# Commonwealth *v.* Philadelphia Rapid Transit Co., Appellant.

*Taxation—Corporations—Motor power companies—Leasing lines from municipality—Act of March 22, 1887, P. L. 8; June 1, 1889, P. L. 420, and June 7, 1923, P. L. 520.*

1. Where the property of a municipality is held for purely private purposes, and used for profit and gain, it may be taxed in the same manner as the property of individuals or private corporations.

2. Where the City of Philadelphia constructs and owns railway lines as authorized by the Act of June 7, 1923, P. L. 520, and leases the same to a motor power company, chartered under the Act of March 22, 1887, P. L. 8, the revenue derived from such lines of railway are taxable under the Act of June 1, 1889, P. L. 420, against the lessee company.

3. The Act of 1889, imposes a tax on every corporation which operates for hire and thus receives income, and the courts will not read into the statute a limitation that the right to use must be acquired by virtue of a lease from a taxable street railway or transportation corporation.

Argued May 24, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 17, May T., 1926, by defendant, from order of C. P. Dauphin Co., Commonwealth Docket 1924, No. 76, sustaining tax settlement, in case of Commonwealth v. Philadelphia Rapid Transit Co.   Affirmed.

Appeal from tax settlement.   Before HARGEST, P. J. The opinion of the Supreme Court states the facts. Judgment for Commonwealth.   Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*Ellis Ames Ballard,* of *Ballard, Spahr, Andrews & Madeira,* with him *Allen Hunter White, James V. Murray* and *Boyd Lee Spahr,* for appellant.—The City of Philadelphia would not be subject to this tax if it operated its own lines: City of Corry v. Chair Co., 18 Pa. Superior Ct. 271; Allen's App., 81½ Pa. 302; Renick v. Boyd, 99 Pa. 555; Pardee's App., 100 Pa. 408; Bucher v. Com., 103 Pa. 528, 534; Nanticoke Bridge, 40 Pa. Superior Ct. 345, 350; Robinson v. Jefferson Co., 6 W. & S. 16; Com. v. Witman, 217 Pa. 411.

Municipal corporations are never held to be taxed under general tax laws when not expressly named: Directors of the Poor v. School Directors, 42 Pa. 21; Erie County v. Erie, 113 Pa. 360; Pittsburgh v. Sterrett Subdistrict School, 204 Pa. 635.

The city is not a transportation company: Com. v. Corp. for Relief of Widows, etc.: 15 Dauphin Co. R. 29.

If the city is not liable, appellant, as its lessee, is not.

The statute imposes the tax only when the lease is from a street railway company.

The statute contemplates the apportionment of the tax between a lessor and lessee, both of whom are taxable.

The word "operating" cannot be read alone out of its context and thus justify the tax.

The act is not an all inclusive one embracing all transportation of passengers.

Taxing laws are strictly construed. ·. An intention to tax must be clearly shown, and such is not the case in this instance: Com. v. Water Co., 271 Pa. 456; Cent. Penna. Lumber Co.'s App., 232 Pa. 191.

*John Robert Jones,* Special Attorney for the Commonwealth, with him *George W. Woodruff,* Attorney General, for appellee.—Appellant being admittedly within the terms of section 23 of the act and having operated the railways in question, its liability for tax arises under the express language of said section.

A municipal corporation may act in a double capacity; in its capacity as a "public corporation created by the government for political purposes" and also in the capacity of a private corporation: Phila. v. Fox, 64 Pa. 169; Western S. F. Soc. v. Phila., 31 Pa. 175; Moore v. Luzerne Co., 262 Pa. 216; Com. v. Casey, 231 Pa. 170; Central I. & S. Co. v. Harrisburg, 271 Pa. 340; Jolly v. Boro., 216 Pa. 345.

OPINION BY MR. JUSTICE SADLER, June 26, 1926:

The City of Philadelphia was granted authority by the Act of June 17, 1913 (P. L. 520), to engage in the business of transportation of passengers for hire. It was permitted to build subways, elevated structures, and surface lines, provide the necessary motor equipment, and furnish power required. Lines so constructed may be operated by the municipality itself, or the right given to others for limited periods upon the payment of agreed rentals. If deemed wise, the system installed, or any part thereof, can be sold. At its own expense, it erected an elevated railway to Frankford Avenue, and a surface line to Bustleton, and prepared both for service.

The Philadelphia Rapid Transit Company is a corporation deriving its authority from the Act of March 22, 1887 (P. L. 8). It was chartered as a motor power company for the purpose of leasing or operating passenger railway properties, and acquired the right to carry

on the business of various surface and elevated lines in Philadelphia. By agreement, in 1922, it secured control of the Frankford and Bustleton trackage and equipment, built and owned by the city, for a period of five years, at a fixed rental, and undertook the actual management of transportation over them. It filed with the auditor general a report of its gross receipts from all of its traffic for the six months ending June 30, 1923, and was assessed thereon in the amount fixed by the Act of June 1, 1889 (P. L. 420, section 23). Admittedly, it was so chargeable as to sums received from all operation, except the portion collected on the two lines leased from the municipality. As to the amounts, representing the income from the latter, liability for tax based thereon was denied. On appeal to the Dauphin County Court, the entire assessment was upheld, and judgment was entered for the balance unpaid. This decision is now brought here for review.

The Act of 1889 imposes a charge of eight mills upon the gross receipts of "every railroad company...... transportation company, street passenger railway company, and every other company...... owning, operating or leasing to or from another corporation...... [any] device for the transportation of freight or passengers." The contention is that the words used in the latter clause have application only to properties leased from a corporation which itself would be subject to the tax, if operating the lines by its own officers, and that a municipality, as was the lessor here, is not subject to such a charge, when so conducting the business of transporting passengers on owned tracks. It is urged that, since such a governmental agency is not a corporation of the kind designated by the act, and has not, in express terms, been subjected to any liability by the Act of 1889, therefore no tax on gross receipts can be collected from the operating motor power company, which is a lessee from it.

"The power to impose a tax is given by statute, and an act relating thereto embraces such subjects only as

are plainly within its terms. In other words, 'a tax law cannot be extended by construction to things not described as the subject of taxation': Boyd v. Hood, 57 Pa. 98. To entitle the Commonwealth to the tax imposed, the words of the statute must be clear and unambiguous": Com. v. Penna. Water & Power Co., 271 Pa. 456, 458. Municipal corporations may be charged by express enactment, as in the case of real estate owned and not used as an instrumentality of government, but held for private purposes or made the medium of gain or profit: Allegheny County v. Diamond Market, 123 Pa. 164; Chadwick v. Maginnes, 94 Pa. 117. (See also, Erie County v. Erie County Commissioners, 113 Pa. 368, in effect overruled by Sewickley v. Sholes, 118 Pa. 165, which decision was, however, the subject of further explanation in Philadelphia v. Barber, 160 Pa. 123, and in Mercersburg College v. Mercersburg, 53 Pa. Superior Ct. 388, where the later legislation controlling is discussed). So, the legislature may impose a tax on municipal bonds, and direct the payment by the city officials (Wilkes-Barre D. & S. Bank v. Wilkes-Barre, 148 Pa. 601; Com. v. Chester, 123 Pa. 626; Act June 17, 1913, P. L. 507), or may exempt certain classes of such instruments, as those issued in payment of water works acquired: Act April 22, 1909, P. L. 135.

"It is always to be assumed that the general language of statutes is made use of with reference to taxable subjects, and the property of municipalities [when used for governmental purposes] is not in any proper sense taxable": Pittsburgh v. Sterrett Subdistrict School, 204 Pa. 635, 640. But when the charge is against the city possessing or using instrumentalities for other than strictly public purposes, involving the exercise of rights in its private capacity, and the use of property for profit and gain, there is no legal reason why the legislature may not assess a tax, if it deems such course wise. This distinction has been pointed out in many federal cases, cited by both appellant and appellee here. The

right to assert a claim, under the facts there presented, was upheld in South Carolina v. United States, 199 U. S. 437; Fidelity Dep. Co. v. Penna., 240 U. S. 319; Baltimore Dry Dock Co. v. Baltimore, 195 U. S. 375; Choctaw R. R. Co. v. Mackey, 256 U. S. 531; and denied in Ambrosini v. United States, 187 U. S. 1; United States v. B. & O. R. R. Co., 17 Wallace 322; United States v. King County, 281 Fed. R. 686. The pertinent authorities dealing with the power of one government to tax the agency of another are collected and discussed in the recent decision of Metcalf v. Mitchell (Adv. U. S. Sup. Ct., 70 L. ed. 185), involving the imposition of federal income tax on officials of the separate commonwealths. The general rule as to the right of the state to tax its subdivisions has been thus stated: "When property is held by a municipal corporation for purely private purposes, and is not devoted to or used, or intended to be used, for public purposes, it has been held that it is not excepted from the operation of the general statutory provisions providing for the taxation of property, and is subject to be taxed in the same manner as the property of individuals": Dillon on Municipal Corporations, 5th ed., vol. 4, p. 2433.

Granting the right to tax the municipality where its property is not engaged in carrying on its governmental functions, but is used for gain, we are confronted with the question whether the legislature has expressly imposed such a charge here by section 23 of the Act of 1889. Though not controlling the determination of the present case, we refer briefly to one branch of the argument presented by the Commonwealth. It insists that, in furnishing facilities for the transportation of passengers, as provided by the Act of 1913, the city acted in its private capacity, and thereby comes within the word "corporation," and its lessee is within the express terms of the statute. Color is lent to the contention made by statements found in the only Pennsylvania case in which the question has been discussed (Com. v. Carlisle

Gas & Water Co., 14 Dauphin Co. R. 133), but there, the borough was not the owner and lessor of the property of the company, which sought to evade payment of the tax on its gross receipts, but merely held a part of its capital stock. Our cases are numerous in which it has been held that, where the municipality is not engaged in public business, it acts as do others likewise engaged, and is subject to the same duties and obligations as to its contracts and the responsibility for the acts of those employed by it: Baily v. Phila., 184 Pa. 594; see also, Moore v. Luzerne County, 262 Pa. 216; Com. v. Casey, 231 Pa. 170. It is not, however, necessary to decide that such course makes it a "corporation" within the meaning of the phrase in the statute now under consideration.

The Act of 1889 imposed the gross receipt tax on all street railway companies, or "any other company," organized under the laws of the Commonwealth, "owning, operating, or leasing" properties for the transportation of passengers. It recognized those corporations which owned, those which did not own but operated (such were motor power companies provided for by the Act of 1887), and others which conducted its business by virtue of leases from either passenger railway or motor power corporations. The Philadelphia Rapid Transit is an operating company, distinct from the organizations whose rights it may have acquired, and conducts, by virtue of the Act of 1887, the business of carrying persons for hire. Admittedly, it is operating, but it contends that, since rights were acquired to the lines in question by lease, it is subject to a gross receipt tax only if its lessor is of the class of companies named, which itself would be subject to assessment, if carrying out its authorized powers, and that a municipality is not of the character contemplated. This argument fails to give due weight to the words of the statute, which expressly includes operating companies as separate and distinct associations. It does not say that the business conducted must be connected with ownership or leasing, for it uses the dis-

junctive "or" in referring to the classes of those liable, and there was a legal entity, the motor power company, whose function was that of "operating," when the act was passed. The corporate body, which was engaged in the carrying of passengers for hire, and, as a result, collecting fares, was the object sought to be reached, and the defendant was of that class, and comes within the terms used.

Notwithstanding the able argument of counsel for appellant, we are not convinced that the operation refers only to those companies leased from others which would themselves be liable, and that management of a municipally owned railway was not included. The statute is directed to all "doing business" as carriers of passengers for hire, of which the defendant was one. This conclusion is not affected by consideration of the proviso in section 23 that taxes accruing may be apportioned between a lessor and lessee "in accordance with the terms of their respective leases and agreements," which, in the first instance, are to be paid by the operating company, a regulation evidently inserted for the benefit of the Commonwealth, so that it might look to one source for the payment of sums due. The charge, under the Act of 1889, is directed to the corporation which actually receives receipts from the carriage of passengers, whether the tracks which it controls be constructed by, or leased from, some other party. It is imposed on every company which operates for hire, and thus receives income, as does a motor power company, and there is not to be read into the statute a limitation that the right to use must be acquired by virtue of a lease from a taxable street railway or transportation corporation. Irrespective of the lessor, the motor power company was made the subject of assessment. This being so, it follows that the learned court below properly held the defendant liable, and entered judgment for the Commonwealth.

The judgment is affirmed.